IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONYA L. FREEMAN, | No. 2:13-CV-1423-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____ / | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 12) and defendant's cross-motion for summary judgment (Doc. 15).

/ / /

/ / /

/ / /

1

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on May 11, 2010. In the application, plaintiff claims that disability began on August 17, 1965. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on July 19, 2011, before Administrative Law Judge ("ALJ") Carol L. Buck. In a September 20, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): polysubstance abuse disorder; polysubstance abuse induced psychosis; antisocial personality disorder; psychotic disorder, NOS; schizoaffective disorder; anxiety; borderline intellectual functioning; diabetes; diabetic neuropathy; obesity; bone spurs of the bilateral feet; hypertension; a thyroid nodule; and borderline heart size;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work except the claimant cannot sustain work on a regular and continuing basis due to polysubstance abuse;

4. Considering the claimant's age, education, work experience, residual functional capacity, polysubstance abuse, and the Medical-Vocational Guidelines, there are no jobs that exist in significant numbers in the national economy that the claimant can perform;

5. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work except the claimant can stand and walk two to four hours in an eight-hour workday and sit for six to eight hours in an eight-hour workday; the claimant can perform unskilled work with limited public contact and occasional contact with supervisors and co-workers; the claimant cannot perform tandem work in that she cannot work with another where she is required to work together to process the work;

6. If the claimant stopped the substance use, and considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and

7. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use; because the substance use disorder is a contributing factor material to the determination of disability, the claimant

has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision.

After the Appeals Council declined review on May, 20, 2013, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

## III. DISCUSSION

In her motion for summary judgment, plaintiff argues, among other things, that the ALJ erred in concluding that substance abuse is a material contributing factor. If drug or alcohol use is a contributing factor material to a determination of disability, an individual is not entitled to benefits. See 20 C.F.R. §§ 404.1535 and 416.945; see also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998). The burden is on the plaintiff to demonstrate that drug and alcohol addiction is not a material factor by showing that an impairment would have been disabling even if drug and alcohol use ceased. See Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007). To do so, the plaintiff would have to demonstrate that the impairment ". . . would remain during periods when she stopped using drugs and alcohol." See Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001) (citing Sousa, 143 F.3d at 1245).

Plaintiff initially appears to argue that she has met this burden because, regardless of drug use, she is disabled due to mental retardation. In this regard, plaintiff challenges the ALJ's evaluation of Dr. Regazzi's opinions in the context of applying the listings governing mental retardation.[1] Plaintiff also argues that the ALJ failed to articulate sufficient reasons for finding her statements not credible. Finally, plaintiff argues that the ALJ failed to fully develop the record in light of ambiguous evidence from Dr. Canty.

/ / /

/ / /

/ / /

/ / /

---

[1] The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

4

### A. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

5

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

> As to Dr. Regazzi, the ALJ stated:
>
> . . .Dr. Regazzi opined that claimant had mild mental retardation.  The undersigned rejects Dr. Regazzi's diagnosis because there is no independent supporting evidence to substantiate the claimant has such reduced mental function.  Notably, the claimant never alleged mental retardation in her application.  In Disability Reports – Adult, she stated she could speak, read, and understand English.  She also noted she could write more than her name in English.  She alleged only that she hears voices, sees things that are not there, is paranoid, and has anxiety.  She stated the highest grade she completed was the 12th grade and further stated that she did not attend special education classes.  (Ex. 2E, 9E).  She testified that she went to reform school and was "required" to graduate at age 17 thereby attempting to infer that she was given a diploma regardless of her academic capabilities.  The undersigned finds this inference not credible.  There are no educational records or medical records to support mental retardation.  She never alleged mental retardation to Dr. Regazzi either.  Moreover, the claimant was examined by consultative psychiatrist, Timothy Canty, M.D., who as a medical doctor has the training and experience to note whether someone he examines has reduced mental function on the order of mental retardation and would have noted so.  He noted, "She may have intellectual problems but some of her answers on the cognitive portion [of the examination] are clearly not credible."  (Ex. 3F, 12F).
>
> * * *
>
> As for the "paragraph B" criteria [Listing] 12.05 requires a valid verbal, performance, or full scale IQ of 59 or less.  The undersigned finds that, despite post-hearing testing by psychologist Dr. Michelina Regazzi, who found test results showing a full scale IQ of 57 (Ex. 12F), the undersigned rejects the findings. . . .  Moreover, the evidence does not show that the claimant established such impairment prior to age 22.  There are no school records establishing the claimant was mildly mentally retarded and no mention of the possibility of that fact in her treatment records.  Her treating physicians likely would have noted a severe inability to comprehend on her part as part of their findings.  The evidence does establish that, while the claimant testified she went to reform school in high school, she testified that she graduated.  Moreover, she admitted in Disability Reports she speaks, writes, and reads English (Ex. 2E, 9E).  Such evidence shows the claimant did not establish "significant sub-average general intellectual functioning with deficits in adaptive functioning prior to age 22" [as required under the listings].

///

Later in the hearing decision, the ALJ again discusses Dr. Regazzi's opinions as follows:

> After the hearing, the claimant's representative obtained a psychological evaluation of the claimant. On August 10, 2011, psychologist, Michelina Regazzi, Ph.D., examined the claimant. On mental status examination, the claimant was cooperative and spoke with clear articulation using simple speech. She had fair ability to express her thoughts clearly and logically. Her affect was of normal range and mood was noted as down. Her thought content evidenced no psychotic symptoms nor did she express thoughts of harm toward herself or others. Dr. Regazzi performed the following tests: Wechsler Adult Intelligence Scare (WAIS-VI) and the Wide Range Achievement Test (WRAT-4).
>
> On the WAIS-IV, the claimant's Verbal Comprehension Index was 63, Perceptual Reasoning Index was 60, Working Memory Index was 66, and Processing Speed Index was 65. Her Full Scale IQ was 57. Dr. Regazzi opined these results fell within the deficient range. On the WRAT-4, the claimant's reading, spelling, and math scores were identical at 55 each and Dr. Regazzi opined her scores fell in the deficient range as wall.
>
> Dr. Regazzi diagnosed the claimant with psychotic disorder, NOS, and mild mental retardation. She assessed the claimant's GAF score as 55. She opined the claimant's ability to understand, remember, and carry out simple instructions was marked[ly limited], as was her ability to maintain adequate pace. The claimant's ability to understand, remember, and carry out complex instructions was severe[ly limited]. She is moderately limited in her ability to maintain attention and concentration and to interact appropriately with the public. Her ability to interact appropriately with supervisors and co-workers was mildly impaired, as was her ability to communicate effectively with others.
>
> The undersigned rejects Dr. Regazzi's diagnosis of mild mental retardation. There is no independent supporting evidence in the file to substantiate the diagnosis and it conflicts with other substantial evidence in the case, specifically with Dr. Canty's credible findings and diagnoses. Dr. Canty noted the claimant's behavior indicated malingering. Dr. Regazzi reviewed the following records in preparation for her examination of the claimant: Department of Corrections Medical notes dated May 14, 2008, UC Davis Medical Center notes dates May 13, 2011, to May 26, 2011, and Dr. Canty's psychiatric evaluation dated May 27, 2011. In comparing the two reports of examination, the undersigned notes that Dr. Canty's mental status examination (MSE) and his conclusion regarding malingering was more thoroughly explained. He included the claimant's answers to the MSE to support his conclusion of malingering. . . . Dr. Regazzi provided conclusionary statements regarding her findings on MSE without substantiating support in the form of the claimant's responses to typical MSE questions. Thus, it is difficult to determine if Dr. Regazzi tested whether the claimant tended towards malingering. However, she did know that Dr. Canty believed the claimant was a malinger. Dr. Regazzi's report is focused on the claimant's performance on standardized intelligence tests. Dr. Regazzi noted the claimant reported to her that she

could not read and has to have her mail read to her. Dr. Regazzi did not note whether the claimant required help with reading while taking the tests. She merely noted that she encouraged the claimant to perform to the best of her ability and that she "appeared to do so." Moreover, Dr. Regazzi performed no Trials A and B tests to determine malingering.

The diagnosis also conflicts with the claimant's own statements as discussed above. . . .

As discussed above, Dr. Regazzi opined the claimant had marked limitations in her ability to understand, remember, and carry out simple instructions and to maintain adequate pace, and that the claimant's ability to understand, remember, and carry out complex instructions was severe[ly limited]. The undersigned notes that a "marked" limitation is defined as "there is serious limitation in this area. The ability to function is severely limited but not precluded." Moreover, the evidence shows the claimant is able to perform simple tasks such as care for her person[al] hygiene, perform household chores, shop with her daughter, and attend meetings for substance abusers. Thus, the undersigned finds that the claimant's allegations of borderline intellectual functioning, psychotic disorder, anxiety, depression, schizoaffective disorder, and antisocial personality disorder are addressed adequately with the limitation to unskilled work with limited public contact and occasional contact with supervisors and co-workers and a preclusion from tandem work.

The court is unpersuaded by plaintiff's arguments challenging the ALJ's analysis of Dr. Regazzi's diagnosis of mental retardation. As indicated above, when faced with conflicting medical opinions – in this case those from Drs. Regazzi and Canty regarding mental retardation – the ALJ may resolve the conflict by stating sufficient reasons for doing so. Here, the ALJ has done just that. In particular, the ALJ accepted Dr. Canty's opinion over Dr. Regazzi's for the following specific and legitimate reasons: (1) plaintiff had never alleged mental retardation; (2) no treating doctor has ever diagnosed mental retardation; (3) plaintiff's own statements are inconsistent with mental retardation; and (4) Dr. Canty noted objective evidence of malingering. Most notable among the reasons cited by the ALJ for rejecting Dr. Regazzi's diagnosis of mental retardation is plaintiff's lack of any such claim in her disability application or elsewhere in the claims process.

/ / /

/ / /

## B. Credibility Finding

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v.

Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

The claimant alleges disability due to polysubstance abuse disorder, polysubstance abuse induced psychosis, antisocial personality disorder, schizoaffective disorder, depression, anxiety, borderline intellectual functioning, psychotic disorder NOS, diabetic neuropathy, obesity, bone spurs of the bilateral feet, hypertension, a thyroid nodule, and borderline heart size.

If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The record indicates that during times of incarceration when the claimant was drug free, her mental status examinations were within normal limits. The record reveals, as discussed above, that when the claimant is out of prison with access to drugs of abuse she experiences hallucinations. Thus, during the time that substance use is stopped and she regularly complies with anti-psychotic prescriptive medications (Remeron) she does not experience drug-induced psychosis. She reported to treating personnel that she has experienced episodes of auditory hallucinations in the past for which she was prescribed Remeron. The record indicates that she presented to care complaining of auditory and tactile hallucinations, during a time when she tested negative for drugs of abuse, but she was not taking Remeron, and even so, her mental status examination was within normal limits. . . .

On May 24-26, 2011, treatment records from University of California Davis Medical Center indicate the claimant presented to care complaining of auditory and tactile hallucination. She admitted incarceration four months prior for drug-related charges admitting prior marijuana and cocaine use. She said she was in a mandated drug rehabilitation program (Gateway) for the past 13 days as part of her efforts to regain custody of her 14-year-old son. About her treatment at Gateway, she reported "it has been overwhelming as they have made her stop working, taken away her son, and mandated she attend many meetings a day which are tiring her out." She reported four days of hearing voices telling her that the program is not good for her and that she should leave the program. She also reported "feeling things that were not really there." She said at the time of the hallucinations she knew they were not there. Treatment records indicated she was "stressed by the demands of her parole officer and child protective services who required her participation in the drug program as a prerequisite to regaining custody of her minor son." Blood tests were negative for drugs of abuse. Her mental status exam (MSE) revealed the claimant was well groomed, had good cognition and impulse control, good eye contact, ordered thought processes, and her insight and judgment were

> good. She was diagnosed with psychosis NOS, depression NOS, anxiety NOS, and r/o schizophrenia. Her GAF score was 50. (Ex. 2F/11-21; 9F/16-26).
>
> * * *
>
> The claimant alleged functional illiteracy or borderline intellectual functioning. She testified she attended a reform school while a teenager and further stated the program required her to graduate at age seventeen. She stated she does not read or spell well, but she can spell simple words. She can add and subtract, but not multiply or divide. She stated she can read some of the newspaper but it would take her a while. She had a friend help her fill out the paperwork for disability. She was able to fill out Function Reports in connection with this claim (Ex. 4E, 5E).

The ALJ then discussed the findings of consultative examining psychiatrist Timothy Canty, M.D., who opined, based on objective findings following a mental status examination, that plaintiff was malingering. Specifically, the ALJ noted:

> Dr. Canty opined the claimant's claims of auditory hallucinations seemed rather suspicious. Her behavior was childlike, [gamy], and not terribly credible. "She may have intellectual problems but some of her answers on the cognitive portion are clearly not credible." She does appear to have substance abuse problems and her records state that she has a history of drug-induced psychosis. He stated her performance and behavior during his examination strongly suggest malingering of certain symptoms. . . .

The court does not agree with plaintiff that the ALJ recited no more then "empty verbiage" and took "no reviewable stand on Ms. Freeman's credibility at all." Specifically, the ALJ noted that, during times when plaintiff could not use drugs (i.e., while incarcerated), her mental status examinations revealed normal results. This directly contradicts plaintiff's testimony of disabling symptoms even without drug use, and the ALJ was permitted to discount plaintiff's credibility on this basis alone. Additionally, the ALJ cited Dr. Canty's finding of malingering, which is another valid reason to reject plaintiff's testimony as not credible.

///

///

///

///

### C. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff argues that the ALJ erred by not fully developing the record with respect to Dr. Canty's findings. Specifically, plaintiff asserts that evidence from Dr. Canty is necessarily ambiguous because the doctor opined: "She may have intellectual problems but some of her answers on the cognitive portion are clearly not credible." The court does not find error. While Dr. Canty acknowledged that plaintiff likely has intellectual problems, his findings are not ambiguous. To the contrary, Dr. Canty clearly states that he found objective evidence of malingering. Thus, the evidence from Dr. Canty was neither ambiguous nor inadequate.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 12) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 15) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 29, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE